ROBERTS, Acting Chief Justice.
This is one of a series of major rate cases instituted and processed almost simultaneously by the Florida Public Service Commission involving the six largest telephone and electric utilities in the State. The Commission’s stated purpose in the instant case involving the Florida Power Corporation was to consider the reasonableness of the rates, rate-making practices, policies, and philosophies under which the utility operates .and prices its product. Florida Power Corporation produces, distributes and sells electrical energy.
The rates a utility is permitted to charge are determined by allowing a fair and reasonable rate of return on the utility’s rate base. In determining the rate base a test year is selected and then the rate base is generally determined on the basis of the average investment during the test year or at the end of the period. In the instant case, by Order No. 3730 the Commission determined that the twelve months ending September 30, 1964 should be used as the test year for the determination of a rate base and a rate of return.
After public hearings were held the Commission entered Order No. 4139 finding that the utility was entitled to earn a return of 6.70% on a rate base of $329,668,000; that the rate of return for the test period was 6.81%; that accordingly the utility’s revenues should be reduced by the amount of $726,000, annually, on the basis of the test year operations. The utility was directed to file tariff changes which would make effective the rate reductions and to file revised fuel and commodity adjustment clauses more closely related to’ current costs. Adjustment clauses were developed to protect the customer in the case of sharp decreases in fuel or commodity costs, and the utility in cases of sharp increases.
The utility filed proposed adjustment clause revisions. The proposed fuel adjustment clause provided for automatic increases or decreases in the charge for energy per kwh produced and delivered of $0.00001 (Yioo of a mill) per kwh for each $0.00001 (Jíoo of a mill) increase or decrease below or above 4.00 mills per kwh in the average cost of fossil fuel. The proposed commodity adjustment clause provided automatic adjustments in the charge for service of .3% for each index point increase above 110 or decrease below 102 as reported in the Monthly Wholesale Price Index of Commodities Other Than Farm Products published by the U. S. Department *751 of Labor, Pinellas County, an intervenor, filed exceptions to the proposed tariff changes and'adjustment clause revisions.
The Commission concluded that the proposed adjustment revisions were in compliance with the Commission’s intent expressed in Order No. 4139 to have the adjustments more closely related to the current prices. In approving the proposed tariff changes and adjustment clause revisions the Commission in Order No. 4139-B permitted the utility to roll into the rate base the revenues from the application of both adjustment clauses at the average total adjustment for 1966 rather than the level at the end of the test year 1964. The Commission also froze the utility’s fuel adjustment clause at the September 1967 level for a period of one year from October 26, 1967, and imposed a commodity adjustment “dead band” of 102 to 112, such being an area between which there is not a required adjustment.
The Commission reasoned that the adjustment clauses could not be readjusted to the test year levels without running the risk of imposing a retroactive rate increase on the public, insofar as the fuel adjustment is concerned, and a retroactive rate reduction on the utility, insofar as the Commodity Adjustment clause is concerned.
It is the freezing of the fuel adjustment clause and the manner of rolling in the commodity adjustment clause which resulted in the present controversy seeking to have Order No. 4139-B reviewed."
The gist of Pinellas County’s contention is that although Order No. 4139 directed an annual revenue reduction of $726,000, Order No. 4139-B by permitting the utility to roll into the base rates the level of the commodity adjustment for the year 1966 rather than the level at the end of the test year resulted in allowing the utility a revenue increase of $2,100,000 over the test year.
In a subsequent Order No. 4341 the Commission has ordered the utility to reduce its gross annual revenues by the amount of $4,094,000, considerably more than the $2,100,000 sought by Pinellas County. Furthermore, the questions of whether the utility should be allowed to roll into base rates adjustment clause revenues is now moot for all practical purposes in that both clauses have now been deadbanded and the utility at present deprives its revenues through base rates.
Consideration of the oral .arguments, the petition, the record and briefs leads to the conclusion that there has been no deviation from the essential requirements of law, so the petition for certiorari is hereby
Denied.
DREW, THORNAL, CARLTON and CALDWELL (Retired), JJ., concur.